**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **CESIA SANCHEZ,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-18-3106 |
| **WHOLE FOODS MARKET GROUP, INC.,** | * |
| Defendant. | * |

**MEMORANDUM OPINION**

In this action, Plaintiff Cesia Sanchez alleges race discrimination, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and breach of her employment contract by her former employer, Whole Foods Market Group, Inc. ("Whole Foods"), relating to her termination from employment. Now pending before the Court is Defendant's Motion to Dismiss, ECF No. 9, which Plaintiff opposed, ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss is granted in part and denied in part.

**I.  BACKGROUND[1]**

Plaintiff, Cesia Sanchez, a Latina of Hispanic ancestry, began working for Defendant, Whole Foods, in November 2002. ECF No. 1-2 ¶ 5. In 2013, after working as an Assistant Team Leader at different stores since 2002, Sanchez was promoted to Facilities Manager at a distribution center in Landover, Maryland. *Id.* ¶ 5. As one of the three managers at the distribution center, Sanchez was specifically tasked with overseeing the kitchen facilities, while

---

[1] Unless otherwise stated, the background facts are taken from Plaintiff's Complaint, ECF No. 1-2, and are presumed to be true.

1

Jack Lunick oversaw the seafood facilities and Russell Cartwright managed warehouse distribution. Both men are Caucasian. *Id.* ¶ 6. Many of the employees Sanchez managed were Hispanic. *Id.*

Until early 2016, Sanchez's annual performance evaluations showed she exceeded the expectations for her position and had never received a written reprimand. *Id.* ¶ 5. This changed when Cartwright was promoted to Executive Director of Facilities and, shortly thereafter, placed Sanchez on administrative leave. *Id.* ¶ 7-8. When she asked why this happened, Cartwright told her that Whole Foods headquarters and regional had received a letter and complaints from her team members because a television did not work at the facility, there was a lack of cleaning resources, and a supervisor who reported to Sanchez was disrespectful. *Id.*

After resuming her duties, Sanchez attended a meeting with Cartwright and the entire kitchen team, during which Cartwright explained there would no longer be a kitchen supervisor but Sanchez would remain a manager. *Id.* ¶ 9. When Cartwright asked the team if they were okay with this decision, two team members, Marie and Mariana, objected. *Id.* Then, as Sanchez left this meeting, Maria, a Hispanic female team member, said to her: "We don't want you around here perra." *Id.* "Perra" is Spanish for "bitch dog." *Id.* Sanchez then reported the incident to Cartwright and Dave Gearhart, Whole Foods's human resources director, explaining that she felt threatened in the workplace and would like management to intervene and take corrective action. *Id.* No such investigation of action was taken. *Id.* As a result, Maria felt empowered to engage in insubordinate behavior. *Id.*

On May 30, 2016, despite the Whole Foods policy that a second female should be present whenever a male supervisor meets with a female employee, Cartwright and Gearhart met alone with Sanchez. *Id.* ¶ 10. At the meeting, Cartwright pressured Sanchez to resign, asking her to

seek a demotion back to assistant store team leader, because her team members did not like her. *Id.* When she attempted to speak, Gearhart cut her off, stating he did not care for what she had to say. *Id.* Sanchez refused the request to resign. *Id.* Then, despite Whole Foods's progressive discipline policy requiring a verbal and written warning before a final written warning, Cartwright issued Sanchez a final written warning. *Id.* Five days later, in a meeting with Cartwright and Regional Vice President Julia Obicci, a Caucasian female, Sanchez received a final written warning.[2] *Id.* ¶ 11.

In mid-August 2016, one of Sanchez's male subordinate employees asked her to attend a disciplinary meeting with a female team member. *Id.* ¶ 12. When the female team member began to scream at the male supervisor, Sanchez warned her that her behavior was insubordinate and instructed her to either stop screaming at her supervisor or go home. *Id.* The female team member chose to go home. *Id.* Whole Foods then terminated Sanchez on September 12, 2016, claiming she made a bad decision to send the female team member home without pay. *Id.* ¶ 13.

Sanchez filed suit against Whole Foods in the Circuit Court for Montgomery County, Maryland on August 7, 2018. ECF No. 1 ¶ 1. In her Complaint, Sanchez alleges disparate treatment and hostile work environment based on race, in violation of 42 U.S.C. § 1981, and common law breach of contract. ECF No. 1-2 ¶¶ 14-23. On October 9, 2018, Whole Foods removed the suit to this Court, alleging this Court has federal question jurisdiction over the § 1981 claim, under 28 U.S.C. § 1331, and supplemental jurisdiction over the breach of contract claim, under 28 U.S.C. § 1367, as well as original diversity jurisdiction, under 28 U.S.C. § 1332. ECF No. 1 ¶ 4-7. On October 23, 2018, Whole Foods filed a Motion to Dismiss. ECF No. 9.

## II. STANDARD OF REVIEW

---

[2] Despite the use of the word "final" in both instances, it appears this was the second "final" written warning.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific inquiry," drawing on the Court's "experience and common sense." *Id.* at 679-80.

Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). In evaluating a Rule 12(b)(6) motion, the Court must consider all well-pleaded allegations in a complaint as true and must construe all factual allegations in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A Rule 12(b)(6) motion should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

Under limited exceptions, the Court may consider evidence outside the complaint without converting a motion to dismiss to one for summary judgment. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). These exceptions include documents explicitly incorporated into the complaint as well as those submitted by the movant that are

integral to the complaint and the authenticity of which is not challenged by the plaintiffs. *See Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Beyond these exceptions, the Court would need to convert the motion to dismiss into one for summary judgment to consider any evidence outside the complaint. *See Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997). "Such conversion is not appropriate where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Gay v. Wall*, 761 F.2d 175, 178 (4th Cir. 1985)).

## III.     DISCUSSION

### A. Count I: 42 U.S.C. § 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Sanchez alleges that Whole Foods violated § 1981 by subjecting her to disparate treatment and a hostile work environment based on her race. Specifically, Sanchez alleges Whole Foods did so by requiring her to report to a Caucasian male colleague, placing her on leave for complaints against another colleague, failing to investigate or take corrective action after she reported being harassed by a subordinate, issuing her a baseless final warning, and terminating her for disciplining a subordinate.

*1.     Disparate Treatment*

Sanchez fails to establish a claim for disparate treatment because she does not provide sufficient allegations to show, beyond mere speculation, that she was treated differently because of her race. Workplace race discrimination claims under § 1981 apply the Title VII *McDonnell Douglas* framework. *See Lightner v. City of Wilmington,* 545 F.3d 260, 263 (4th Cir. 2008). To

establish a prima facie case of disparate treatment under this framework, a plaintiff must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) her job performance was satisfactory; and (4) she received different treatment from similarly situated employees not in her protected class. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

However, to survive a motion to dismiss, plaintiff "need not plead facts sufficient to establish a prima facie case" of discrimination under this framework. *Woods v. City of Greensboro*, 855 F.3d 639, 647-48 (4th Cir. 2017). Rather, a plaintiff must plead facts sufficient to rise above the speculative level "to support a plausible claim," thereby allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Sanchez fails to show beyond "vague claims of differing treatment" that the alleged conduct was based on her race. *Jackson v. Maryland*, 171 F. Supp. 2d 532, 541 (D. Md. 2001). To be sure, a plaintiff is not required to provide allegations comparing her treatment to a similarly situated white comparator. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003). But, "where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination," there must be sufficient factual allegations of differing treatment to "nudg[e] [such] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In *McCleary-Evans v. Maryland Department of Transportation*, 780 F.3d 582, 585-86 (4th Cir. 2015), the African-American plaintiff alleged she was not hired because, prior to plaintiff's interview, the defendant "predetermined" to hire, and subsequently did hire, "two non-Black candidates." There, the Fourth Circuit dismissed the plaintiff's allegations of disparate treatment because, without any comparisons, it left the court to "speculate that the persons hired

were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions." *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 585-86 (4th Cir. 2015). More recently, the Fourth Circuit upheld a claim of disparate treatment because the plaintiff provided sufficient allegations of differing treatment by both alleging that a study showed the racial disparities in contracting by the defendant, which allowed the court to infer discriminatory intent, and by providing specific examples of the defendant's differential treatment of non-minority businesses. *See Woods*, 855 F.3d at 648-49.

Sanchez alleges that Whole Foods, particularly her supervisor Cartwright, discriminated against her "because of her Hispanic ancestry" by treating her differently than the two Caucasian managers. ECF No. 1-2 ¶¶ 10, 16-17. Specifically, she contends that her differing treatment took the form of: being given a Caucasian supervisor who then placed her on administrative leave for complaints made by her team members about the workplace setup and a supervisor who reported to Sanchez; being demoted from her kitchen supervisor role; having her report of racial harassment go ignored and uncorrected; being pressured to ask for a demotion; being disciplined outside of the typical Whole Foods disciplinary process; and, finally, being terminated for disciplining a subordinate. *Id.* ¶¶ 7-13. Sanchez alleges that prior to these adverse employment actions, her performance evaluations showed she exceeded expectations and she had never received a written reprimand. *Id.* ¶ 5. Whole Foods disputes Sanchez's claim that she was treated differently than others because of her race, arguing that her allegations are conclusory.[3] ECF No. 9-1 at 12.[4]

---

[3] Whole Foods also argues that much of the alleged conduct, aside from the final written warnings and the termination, does not constitute an adverse employment action. ECF No. 9-1 at 11. Even if Sanchez could establish that all the alleged conduct constituted adverse employment actions, and it is unclear whether such a conclusion would be correct, Sanchez's claim still fails because she cannot show she received differing treatment based on her race.

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Sanchez's Complaint states that she "observed that Mr. Cartwright treated her differently than Caucasian employees because she is Latina" and that, by taking these actions against her, Whole Foods treated her "differently than its Caucasian managers" "based on her Hispanic ancestry." ECF No. 1-2 ¶¶ 10, 17. Her factual allegations as to the treatment of Caucasian employees or managers, however, ends there. Although her factual allegations as to her own treatment are more detailed, her comparisons to similarly situated Caucasian employees are lacking. Absent further factual development showing comparisons of how similarly situated employees received differing treatment or showing a pattern of discrimination—such as if the Caucasian managers escaped discipline for making similarly bad managerial decisions or if they were not put on administrative leave or demoted because of complaints by their team members—the Court is left to speculate about the alleged disparate treatment. Sanchez fails to allow the Court to reasonably infer a difference in treatment attributable to race based discrimination and, because only speculation can "fill the gaps in her complaint," *McCleary*, 780 F.3d at 586, Sanchez's allegations are insufficient to state a claim of disparate treatment and her claim is dismissed with prejudice.

2. *Hostile Work Environment*

Sanchez fails to state a claim for a hostile work environment because, not only does she fail to sufficiently allege that the alleged conduct was based on race, she fails to allow for the reasonable inference that such conduct surpasses the severe or pervasive threshold necessary to establish such a claim.

A claim for hostile work environment based on race exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working

environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To establish a hostile work environment claim under § 1981, the plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [protected characteristic]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 221 (4th Cir. 2016) (internal quotations omitted).

Courts often find evidence of race-based conduct where direct racial epithets or clearly discriminatory statements are made. *See Ragland v. A.W. Indus.*, 2009 U.S. Dist. LEXIS 71889, *25-26 (D. Md. Aug 13, 2009) (collecting cases). Such race-based comments are found to be severe when they have a "threatening," "degrading," or "humiliating" character. *Boyer-Liberto*, F.3d at 280, and that do more than "give rise to bruised or wounded feelings," *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To be pervasive, such conduct must be habitual; "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotation marks omitted). For example, the Fourth Circuit found an isolated incident of racial harassment to be "extremely serious" where the defendant used the racial epithet "porch monkey." *Boyer-Liberto*, 786 F.3d at 280-81. Moreover, the alleged hostile behavior must be both objectively and subjectively hostile, such that a "reasonable person," in addition to the plaintiff, would perceive it as hostile or abusive. *See Harris*, 510 U.S. at 21. Finally, comments made by a supervisor generally will be considered more severe than those made by co-equals or subordinates. *Boyer-Liberto*, 786 F.3d at 278.

Sanchez alleges Whole Foods subjected her to a hostile work environment by requiring her to report to a Caucasian male colleague, placing her on leave for complaints made against another colleague, refusing to investigate her report of racial harassment or take corrective action, undermining her authority, speaking to her in a demeaning manner, issuing her a baseless final warning, and terminating her for disciplining a subordinate. ECF No. 1-2 ¶¶ 7, 8, 9, 10, 12; ECF No. 14 at 12-13. Sanchez contends that this alleged race-based conduct constitutes a continuing violation, thereby crossing the severe or pervasive bar as a whole. ECF No. 14 at 11-12. Whole Foods argues that none of the alleged conduct can be characterized as race based and, even so, none of it crosses the high bar of severe or pervasive.[5] ECF N0. 9-1 at 6-7, 9. Here, the vast majority of the alleged conduct was not even arguably based on Sanchez's race and, for the minimal conduct that is, that conduct fails to reach the severe or pervasive threshold necessary to create a hostile work environment.

First, the only conduct that is even arguably based on race occurred when a Hispanic female kitchen team member told Sanchez: "We don't want you around here perra." ECF No. 1-2. Sanchez alleges that such a statement is race-based conduct sufficient to support a hostile work environment claim, as is Whole Foods's subsequent failure to investigate or take corrective action, thereby undermining her authority. *Id.* Sanchez alleges perra means "bitch dog" in Spanish, *id.*, which on its own does not sound in racial animus. Instead, this could more arguably be a derogatory comment based on sex. *See, e.g., Colon v. Entl. Tech., Inc.*, 184 F. Supp. 2d 1210, 1218 (M.D. Fla. 2001) (finding that the term "perra" is an insult based on plaintiff being female). Therefore, Sanchez must be arguing that it is the act of uttering it in a foreign language,

---

[5] Whole Foods does not contest that the alleged conduct satisfies the "unwelcome conduct" element. Whole Foods does dispute whether the alleged conduct can be imputable to it, the employer, but the Court does not address this argument because of the sufficient basis for dismissal on the second and third elements.

and less so the derogatory comment itself, that makes it conduct based on race. However, this cannot be so, as it requires the exact kind of speculation to "fill the gaps in her Complaint" prohibited in *McCleary*. 780 F.3d at 586; s*ee also Wang v. Metro. Life Ins. Co.*, 334 F. Supp. 2d 853, 860 (D. Md. 2004) (dismissing hostile work environment claim, finding no race-based conduct, where Chinese-American plaintiff was called "bitch" in Chinese). For these reasons, the "perra" comment and Whole Foods's failure to investigate or take corrective action does not establish a basis for a hostile work environment claim.

So too for the remaining allegedly race-based behavior. No part of the remaining conduct is arguably based on race because, as discussed above, Sanchez alleges she was treated differently than her Caucasian colleagues but fails to establish sufficient comparators to prove race-based discriminatory treatment in the race-neutral conduct she alleges. *See supra* Section III.A.1.

However, even assuming the alleged conduct was based on race, Sanchez fails to show that any alleged conduct rises to the level of severity or pervasiveness necessary to establish a claim. First, as to the "perra" comment, given the dearth of other even arguably race-based conduct, this comment was an "isolated incident" where a subordinate uttered an off-hand comment towards her superior, and certainly does not rise to the seriousness of the epithets required to establish a claim for an isolated incident. *See Boyer-Liberto*, 786 F.3d at 280.

Turning to the remaining conduct, which Sanchez asserts constitutes a continuing violation, Sanchez fails to offer allegations of any habitual threatening or degrading conduct. Instead, Sanchez relies on disciplinary events common in many workplaces. Although being required to report to a Caucasian supervisor, being suspended because her subordinates complained about workplace conditions, being pressured to ask for a demotion after said

11

suspension, and being spoken to sharply by a supervisor during a disciplinary meeting before being terminated may all have been subjectively demeaning or humiliating events for Sanchez, they do not rise to the level of objectively outrageous, intolerable, or habitual harassment required to establish a hostile work environment claim, and thus are beyond the purview of § 1981. Therefore, Sanchez's hostile work environment claim is dismissed with prejudice.

## B. Count II: Breach of Contract[6]

Sanchez alleges that Whole Foods's progressive discipline policy, and her reliance thereupon, created an implied contract and, by failing to comply with the Policy, Whole Foods breached the contract. ECF No. 1-2 ¶ 22; ECF No. 14 at 13-14. In support of these claims, Sanchez asserts that, during her employment with Whole Foods, she accepted and relied on the terms of the company's Policy. *Id.* ¶ 21. This Policy required Whole Foods to issue verbal counseling, a written reprimand, and a final warning before terminating the employee. *Id.* ¶¶ 10, 20. Sanchez contends Whole Foods violated the terms of this policy when it placed her on administrative leave without notice, issued her a final warning before any verbal or written discipline, then terminated her. *Id.* ¶¶ 10-11, 13, 22. Additionally, Sanchez asserts a violation of the terms requiring another female to be present when a male supervisor meets with a female employee because she was called into a disciplinary meeting with two male supervisors and no other female present. *Id.* ¶ 10.

  *1.    Court's consideration of evidence beyond the Complaint*

---

[6] Although the dismissal of the § 1981 claim destroys the basis for § 1367 supplemental jurisdiction over the common law breach of contract claim, the Court retains jurisdiction over this claim under § 1332 diversity jurisdiction because Plaintiff is a citizen of Maryland, Defendant is a corporate citizen of Delaware and Texas, and the amount in controversy exceeds $75,000.

Sanchez's claim of breach of contract relies upon Whole Foods's personnel policies as "constitut[ing] a contract that is binding on Whole Foods," namely the company's progressive discipline policy. ECF No. 1-2 ¶ 19. Whole Foods asserts this policy is contained in the employee handbook, the General Information Guide ("GIG"), which it attached to its Motion. ECF No. 10.

Ordinarily, because the GIG is one that "gives rise to the legal rights asserted," and is therefore integral, the Court would be able to consider it at the motion to dismiss stage. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation and citation omitted). However, because Sanchez challenges the authenticity of the attached document—arguing that there is no evidence it is the document she received or relied upon, ECF No. 14 at 14-15—the Court cannot consider it without converting the Motion to one for summary judgment. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015) ("Consideration of a document attached to a motion to dismiss ordinarily is permitted *only* when the document is integral to and explicitly relied on in the complaint, and *when the plaintiffs do not challenge the document's authenticity*." (emphasis added) (internal quotation marks and brackets omitted)). Such conversion is inappropriate here because Sanchez has not had the opportunity to investigate the origin, veracity, or applicability of the GIG. Lastly, although Whole Foods submitted additional documentation of the authenticity of the GIG with its Reply—a document allegedly confirming Sanchez's receipt of the GIG in question, ECF No. 17-1 at 4—this does not change the fact that Sanchez challenges the document's authenticity, and that issue is properly decided after she has the opportunity for discovery. *See Zak*, 780 F.3d at 606. Therefore, the Court must evaluate the Motion to Dismiss

Sanchez's breach of contract claim without considering the document attached to Whole Foods's Motion to Dismiss.

   2.   *Analysis*

"[A] breach of contract claim is sufficiently pled when the pleader 'alleges the existence of a contractual obligation' and a 'material breach of that obligation' by the opposing party." *Yarn v. Hamburger Law Firm, LLC*, 2014 U.S. Dist. LEXIS 88574, *8 (D. Md. 2014). "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" *Cinar v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 99905, *11-*12 (D. Md. 2014) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 36 A.3d 399, 416 (Md. 2012)). A plaintiff is not required to "attach a complete copy of a contract to the complaint or provide specific language of the contract, but rather, they need only to provide enough information" to allow the defendant to respond. *Yarn*, 2014 U.S. Dist. LEXIS 88574, *3.

Additionally, employment is presumed to be at will in Maryland, meaning an employee can be terminated at any time and without cause. *See Towson Univ. v. Conte*, 862 A.2d 941, 947 (Md. 2004). This presumption, however, can be overcome where the employee shows the employer put forth a policy that "limit[s] the employer's discretion to terminate an indefinite employment" or "set[s] forth a required procedure for termination." *Scott v. Merck & Co.*, 497 F. App'x 331, 334 (4th Cir. 2012) (quoting *Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798, 803 (Md. Ct. Spec. App. 1985)). To do so, "an employee must show <u>both</u> that the policy statement limited the employer's discretion to terminate the employment at will <u>and</u> that the employee justifiably relied on that statement." *Id.* at 335 (emphasis in original). Importantly, "Maryland

14

courts have been clear that 'an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent.'" *Id.* (quoting *Castiglione v. Johns Hopkins Hosp.*, 517 A.2d 786, 793 (Md. Ct. Spec. App. 1986)).

Here, Sanchez asserts that Whole Foods's progressive discipline policy *required* her to receive verbal counseling and then a written reprimand prior to any final written warning. ECF No. 1-2 ¶¶ 10, 20. Only then, after receiving a final written warning, could she be terminated. *Id.* Although she included no specific language from the, allegedly mandatory, Policy, her recounting of the Policy is definite and certain enough to allow Whole Foods to be able to respond.[7]

Next, Sanchez says she accepted the terms of this Policy and even relied on the progressive policy during the course of her employment with Whole Foods. *Id.* ¶ 21. This is sufficient to show both acceptance and reliance upon that offer, thereby creating a contractual obligation. *See Staggs*, 486 A.2d at 803 ("[E]mployer policy directives regarding aspects of the employment relation become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer.") (quoting *Dahl v. Brunswick Corp.*, 356 A.2d 221, 224 (Md. 1976)). Thus, as alleged when Whole Foods terminated Sanchez without providing verbal counseling or an initial written reprimand, instead jumping straight to a final written warning then termination, it breached the Policy and, therefore, the contract.

Lastly, the Complaint alleges no facts suggesting the Policy contains a "clear and conspicuous" disclaimer. Without that, Sanchez alleges sufficient facts to overcome the at-will employment presumption and shows that it is plausible Whole Foods had and breached their

---

[7] Whole Foods focuses its argument for dismissal of this claim on facts outside the Complaint. *See* Mot. Dismiss at 13-16, ECF No. 9-1; Reply in Supp. at 12-15, ECF No. 17. Because the Court cannot consider those facts, *see supra* Section III.B.1, it will not address those arguments.

implied contract, in the form of the progressive discipline policy, when it terminated her beyond the terms of the Policy. For this reason, Whole Foods's Motion to Dismiss the breach of contract claim is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. A separate Order shall issue.

Date: <u>August   5, 2019</u>                    /s/_____
                                                GEORGE J. HAZEL
                                                United States District Judge