**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **CESIA SANCHEZ,** * | |
|     **Plaintiff,** * | |
| v. * | Case No.: GJH-18-3106 |
| **WHOLE FOODS MARKET GROUP, INC.,** * | |
|     **Defendant.** * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Cesia Sanchez brought this civil action alleging race discrimination, in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and breach of contract under Maryland law by her former employer, Defendant Whole Foods Market Group, Inc. ("Whole Foods"), relating to Plaintiff's termination from employment. ECF No. 1-2. On August 5, 2019, this Court dismissed Plaintiff's Section 1981 claim, but allowed the case to proceed to discovery on her Maryland breach of contract claim. ECF No. 20. Now pending before the Court is Defendant's Motion for Summary Judgment on Plaintiff's breach of contract claim, ECF No. 32.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion for Summary Judgment is granted.

**I.   BACKGROUND[2]**

Plaintiff, a Latina of Hispanic ancestry, began working for Whole Foods in November

---

[1] Also pending are Defendant's Motion to Seal Exhibit to Motion for Summary Judgment, ECF No. 34, Plaintiff's unopposed Motion for an Extension of Time to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 35, and Plaintiff's second unopposed Motion for an Extension of Time to File Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 37. These three motions are granted.
[2] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.

2002. ECF No. 32-1 at 13; ECF No. 39 at 2.[3] In 2013, after working as an Assistant Team Leader at different Whole Foods stores, Sanchez was promoted to Facilities Manager at the Mid-Atlantic Warehouse in Landover, Maryland, and specifically tasked with overseeing the Mid-Atlantic Kitchen Facility ("MDK" or the "Kitchen"). ECF No. 32-1 at 13–15; ECF No. 39 at 2. Many of the employees Sanchez managed were Hispanic. ECF 32-3 at 48; ECF No. 39 at 2.

In early May 2016, members of the Whole Foods regional and global leadership teams received an anonymous letter of complaint signed by "MDK Team Members." ECF No. 32-3 at 47–49. The letter contained allegations of mistreatment by the Kitchen leadership team "and specifically the facility team leader Cesia Sanchez[.]"[4] ECF No. 32-3 at 48. The letter alleged that Plaintiff touched Team Members inappropriately and that she "intimidates, humiliates, yells, she points fingers, and does not let . . . anyone of the team members say a word." *Id.* Moreover, the complaint stated that Kitchen Team Members were "really frustrated" and "full of fear that they will lose their jobs[.]" *Id.* On May 13, 2016, Mr. Cartwright, the Facility Team Leader in charge of the Mid-Atlantic Warehouse, received an email from Kitchen Team Member Maria

---

[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[4] While Plaintiff states in her Opposition, ECF No. 39, that "none of the complaints were about her conduct or performance" and supports this statement by citing her Declaration, attached as Exhibit A to her Opposition, this Declaration is not in an admissible form. First, Plaintiff's Declaration, ECF No. 39-1, bears a "/s/" signature but does not comply with this Court's procedures regarding Non-Attorney signatures. "An electronic version of the document bearing '/s/' can be filed along with a statement by counsel that he or she has a signed copy . . . [or] with a scanned copy of the signature page as an attachment[,]" neither procedure was followed here. US. District Court for the District of Maryland, Electronic Case Filing Policies and Procedures Manual §III.C.8.b (2020); *see also J&J Sports Prods., Inc. v. Mumford*, No. DKC 10-2967, 2012 WL 6093897, at *4 (D. Md. Dec. 6, 2012). Additionally, Plaintiff's declaration does not contain "language attesting to its truth" as required by 28 U.S.C. § 1746 in order to be admissible as an unsworn declaration, *J&J Sports Prods., Inc.*, 2012 WL 6093897 at *4, although Plaintiff does recognize she is "subject to the penalty of perjury." ECF No. 39-1. Finally, Plaintiff's declaration includes representations that she retracted during discovery. Plaintiff "cannot create a triable issue in opposition to summary judgment simply by contradicting [her] deposition testimony" with a subsequent Declaration. *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 438 (4th Cir. 1999); *see also Puckett v. United States*, No. 15-cv-939-CBD, 2016 WL 4593468, at *4 (D. Md. Sept. 2, 2016) ("Although issues of credibility are generally left for determination at trial, the Court can disregard testimony in which the non-moving party contradicts their previous, sworn testimony to prevent summary judgment."). The Court notes, however, that consideration of the Declaration would not change the outcome of the pending Motion.

Fuentes containing similar allegations of mistreatment and improper physical contact by Plaintiff. *Id.* at 51–54.

Upon receiving these communications, Whole Foods placed Plaintiff on paid administrative leave and opened an investigation into conditions at the Kitchen. ECF No. 32-2 at 13–14. On May 17 and 19, 2019, Mr. Cartwright and a representative from Team Member Services met in groups with 100 of the 109 Team Members who worked in the Kitchen. ECF No. 32-1 at 16; ECF No. 32-2 at 15. The Team Members raised concerns about a lack of structure and organization in the facility, poor training, inadequate supplies and uniforms, insufficient access to and communication from leadership, broken equipment, disrespect from leadership, and fear of retaliation. *See* ECF No. 32-3 at 55–92; ECF No. 32-4 at 2–3. Several Team Members complained that Plaintiff had allowed certain Team Members to act as "supervisors" in charge of their peers, and these supervisors created unnecessary pressure, showed favoritism, and generally fostered an inhospitable working environment. *See* ECF No. 32-3 at 55–92; ECF No. 32-4 at 2–3.

On May 21, 2016, Mr. Cartwright and a representative of Team Member Services participated in a phone call with Plaintiff to discuss the concerns raised by the Kitchen Team Members. ECF No. 32-2 at 15–16; ECF 32-3 at 97. During the meeting, Plaintiff repeatedly denied knowing about the issues or deflected responsibility for them. ECF No. 32-3 at 98–104. Given the nature and prevalence of the issues at the Kitchen—and Plaintiff's evident lack of awareness of them—the regional leadership concluded that Plaintiff was not meeting the expectations of her role as Kitchen Facility Team Leader. ECF No. 32-3 at 6. Consequently, on May 30, 2016, Mr. Cartwright and Mr. Gearhart, the head of human resources for the Mid-Atlantic Region, met with Plaintiff in person and discussed the possibility of her returning to an

3

assistant team leader position outside the Kitchen Facility. ECF No. 1-2 ¶ 10; ECF No. 32-1 at 17. Plaintiff declined the opportunity, stating she believed that her work in the Kitchen was not finished. ECF No. 32-2 at 27, 29. There was no other female present during this meeting nor did Plaintiff request for there to be a female present. ECF No. 32-2 at 26.

On June 4, 2016, Mr. Cartwright and Regional Vice President Julia Obici met with Plaintiff and informed her that she no longer had the option to transfer and that her continued employment would depend on her performance in her current position at the Kitchen. ECF No. 32-2 at 28; ECF No. 32-3 at 106–07. They presented Plaintiff with a Final Written Warning for "repeated inappropriate behavior in dealing with Team Members, a major infraction [under] *GIG* page 53." ECF No. 32-3 at 106–07. Plaintiff signed the Final Written Warning acknowledging that she had "read th[e] form and underst[ood] this is a Final Warning." *Id.*

After resuming her duties, Plaintiff attended a meeting with Mr. Cartwright and several Team Members to discuss changes in the Kitchen. ECF No. 1-2 ¶ 9. Plaintiff testified that after the meeting a Kitchen Team Member named Maria Fuentes said, "We don't want you here, '*perra*.'" ECF No. 32-2 at 18. The word *perra* is an insult that means "dog" in Spanish, but Plaintiff admitted she does not know whether it is an insult based on race. *Id.* at 23–24. Plaintiff claims this statement was made to her in front of Mr. Cartwright and that she promptly pointed out to Mr. Cartwright that Ms. Fuentes had just called her a dog and asked whether he was going to "say something" to her. *Id.* at 18–20. Mr. Cartwright then called Ms. Fuentes into a meeting with him, Plaintiff, and a representative from Team Member Services and, according to Plaintiff, Ms. Fuentes told the group she did not "like" Plaintiff—but would not say why. *Id.* at 21–22.

Plaintiff did not initiate any form of disciplinary process against Ms. Fuentes, who reported to Plaintiff's assistant, for using the word *perra*. *Id.* at 22–23. Plaintiff did not complain

further to Mr. Cartwright or anybody else at Whole Foods about this incident or how it was handled, nor did Plaintiff share the incident with Ms. Fuente's direct supervisor. *Id.* at 22–24.

Following Plaintiff's return to work, Plaintiff received a detailed "MDK Action Plan" that Mr. Cartwright had drafted with input from the Regional Leadership Team. ECF No. 32-3 at 7, 112–15. The plan included specific action items for improving conditions in the Kitchen, such as requiring Plaintiff to complete all tasks and responsibilities assigned to her by the Region; to schedule two days a week for working alongside Team Members; to ensure that all Team Members were assigned to proper job codes; to complete the weekly financial forecasts required by the Region; to post work schedules at least two weeks in advance; and to promote communication by scheduling more frequent team meetings and sharing meeting notes with Mr. Cartwright. *Id.* Mr. Cartwright also expressly instructed Plaintiff to obtain approval from him or from Team Member Services before issuing discipline to any Kitchen Team Member. *Id.*; ECF No. 32-2 at 38.

Plaintiff failed to achieve the job performance objectives set forth in her action plan. *See* ECF No 1-2 ¶ 13; ECF No. 32-1 at 20. For example, on July 12, 2016, Plaintiff received a health inspection report showing signs of bacterial contamination in the Kitchen. ECF No. 32-3 at 119–20. She neglected to send the report to Mr. Cartwright until three days after receiving it, and only did so after he asked about it. *Id.* at 120–23. Later, in her termination meeting, Plaintiff explained that she did not think the test results were "urgent," even though she understood they could indicate potential Listeria contamination. *Id.* at 135–36. Additionally, on August 16, 2016, Plaintiff met with Team Member Taneka Young to discuss communication and teamwork. *Id.* at 125. According to Plaintiff's written account of the meeting, Ms. Young became "very upset," accused Plaintiff of looking for reasons to write her up, and said, "I don't care what happens

5

here." *Id.* Plaintiff responded by terminating the meeting and sending Ms. Young home without pay. *Id.*; ECF No. 32-2 at 8. Plaintiff did this despite having received explicit instructions not to discipline Team Members without prior approval from Mr. Cartwright or Team Member Services. ECF No. 32-2 at 38.

On September 9, 2016, Mr. Cartwright joined Mr. Gearhart and other members of the Regional Leadership Team on a call to review Plaintiff's performance following her receipt of the final warning. ECF No. 32-3 at 8, 128. They discussed Plaintiff's failure to report the swab test results and her decision to put Ms. Young on unpaid leave without prior approval. *Id.* at 8, 128, 131. They reviewed her failure to follow up on elements of a financial action plan intended to remedy the Kitchen's poor financial performance and noted that she had not taken adequate measures to ensure that all required team meetings were taking place. *Id.* at 8, 128, 131. The participants on the call concluded that Plaintiff was not meeting the expectations of a Kitchen Facility Team Leader, and on this basis decided to terminate her employment. *Id.* at 8.

On September 12, 2016, Mr. Cartwright and Nicole Wescoe, the new Regional Vice President, met with Plaintiff to terminate her employment. *Id.* at 8, 132–139. Celita Rene, a representative from Team Member Services, attended the meeting to take notes. ECF No. 32-4 at 3–4.[5] Mr. Cartwright informed Plaintiff that there was "a lack of partnership" between the Kitchen and the Region, pointing out that she had failed to follow through on several requests from the Region. ECF No. 32-3 at 135–36. They discussed Plaintiff's failure to report the health inspection results, as well as her failure to obtain approval before sending Ms. Young home without pay. *Id.* Mr. Cartwright reminded Plaintiff that she had signed a Final Written Warning on June 4, 2016 for repeated inappropriate behavior in dealing with Team Members. *Id.* Plaintiff

---

[5] While Plaintiff refused to review these notes in their entirety during her deposition, she did not identify anything in these notes that she believed to be an inaccurate description of what occurred. ECF No. 32-2 at 33–37.

6

denied having signed the Final Written Warning and denied that any Team Members had complained about her, but later claimed she had signed the Written Warning without reading it. *Id.* at 136–37. Plaintiff complained that it was not "fair" that she was being separated and that she was entitled to a "second chance." *Id.* Ms. Wescoe concluded the meeting by inviting Plaintiff to contact Mr. Gearhart if she had questions or wanted to discuss her separation, but Plaintiff never did so. *Id.* at 8, 138. Plaintiff did not file a Fair Hearing Request to have her separation reviewed. *Id.* at 8.

Plaintiff filed this suit against Whole Foods in the Circuit Court for Montgomery County, Maryland on August 7, 2018. ECF No. 1 ¶ 1. In her Complaint, Plaintiff alleged disparate treatment and hostile work environment based on race, in violation of 42 U.S.C. § 1981, and common law breach of contract. ECF No. 1-2 ¶¶ 14–23. On October 9, 2018, Whole Foods removed the suit to this Court. ECF No. 1 ¶¶ 4-7. Defendant filed a Motion to Dismiss on October 23, 2018, ECF No. 9, which this Court granted, in part, and denied, in part, on August 5, 2019, ECF No. 20. This Court dismissed Plaintiff's Section 1981 claim but denied Defendant's Motion to Dismiss as to Plaintiff's breach of contract claim. ECF No. 20. Defendant filed the instant Motion for Summary Judgment on June 18, 2020. ECF No. 32. Plaintiff responded in opposition on July 27, 2020, ECF No. 39, and Defendant replied in support of the Motion on August 10, 2020, ECF No. 40.

## II.   STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A material fact is

one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden is on the moving party to demonstrate that there exists no genuine dispute of material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). To defeat the motion, the nonmoving party must submit evidence showing facts sufficient for a fair-minded jury to reasonably return a verdict for that party. *See Liberty Lobby, Inc.*, 477 U.S. at 252. Under Fed. R. Civ. P. 56, a party must be able to put facts to be considered in support of an opposition to a motion for summary judgment in an admissible form. *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 407 (D. Md. 2015). When considering a motion for summary judgment, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby, Inc.*, 477 U.S. at 249.

### III.   DISCUSSION

Plaintiff's final remaining claim in this action is that Whole Foods breached its contract with her by failing to follow its own personnel policies, on which Plaintiff had relied. ECF No. 1-2 ¶¶ 19–22. Specifically, Plaintiff alleges that:

> Defendant breached its contract/agreement with Plaintiff Sanchez by summarily terminating her without verbal counseling, written reprimand, and a legitimate final warning in violation of its progressive discipline policy. Specifically, Defendant Whole Foods placed her on administrative leave based on a complaint against an employee she supervised; issued her a final warning without any basis; and permitted a female staff member to call her a "bitch dog" in Spanish and failed to investigate, correct or discipline the offending employee; and terminated her employment after an employee was insubordinate and chose to leave work for the day rather than cease verbally abusing another employee.

*Id.* ¶ 22. In addition, Plaintiff claimed in her Complaint that Mr. Cartwright and Mr. Gearhart met with her without another female employee present in violation of a "Whole Foods' policy [that] dictates that whenever a male employee supervisor meets with a female employee, another

female should be present[.]" ECF No. 1-2 ¶ 10. Plaintiff is seeking lost back wages, benefits lost including 401K matching, and lost future wages and benefits. ECF No. 32-2 at 57–58.

The personnel policies to which Plaintiff's claim refers are embodied in the Whole Foods Mid-Atlantic Region's employee handbook, called the *General Information Guide* ("*GIG*"). ECF No. 32-1 at 8. Plaintiff has admitted that her breach of contract claim "is based exclusively on the *GIG* and/or policies and statement contained therein[,]" and that her claim "is not based on any alleged contract, agreement, or obligation, whether written or oral, expressed or implied, other than the *GIG* and/or the policies and statement contained therein." ECF No. 32-2 at 59 (emphasis added).

Defendant argues in their instant motion that Plaintiff cannot prevail on her breach of contract claim for two reasons: (1) "she cannot show that *GIG* creates any contractual rights or obligations under Maryland law[;]" and (2) "even if the *GIG* were given contractual effect, Plaintiff could not establish a breach of contract claim based on any alleged violation of the policies in that document." ECF No. 32-1 at 24. The Court agrees with both arguments.

**A.     The *GIG* Does Not Give Rise to Contractual Rights Under Maryland Law**

While Maryland does recognize, in certain circumstances, implied contracts based on provisions of employee manuals, *Lambert v. Washington Suburban Sanitary Comm'n*, 93 F. Supp. 2d 639, 643 (D. Md. 2000) (citing *Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798, 803 (Md. 1985)), an express disclaimer will relieve the employer of any contractual obligations the handbook may otherwise create. *Fournier v. U.S. Fid. & Guar. Co.*, 569 A.2d 1299, 1301 (Md. 1990). "Maryland courts have been clear that 'an employer may avoid contractual liability by any terms which clearly and conspicuously disclaim contractual intent.'" *Scott v. Merck & Co.*, 497 F. App'x 331, 335 (4th Cir. 2012) (quoting *Castiglione v. Johns Hopkins Hosp.*, 517 A.2d

786, 793 (Md. Ct. Spec. App. 1986))).

The employee handbook that Plaintiff relies upon, the *GIG*, repeatedly states that Whole Foods Team Members are employed at-will and that the *GIG* does not create any contractual rights or obligations. ECF 32-1 at 8–9; ECF No. 33 at 3, 7 (filed under seal).  Upon receiving the *GIG* and any subsequent updates, each Team Member must acknowledge that his or her employment is at-will and the *GIG* "is not a contract and contains no promises or guarantees regarding the terms or conditions of [the Team Member's] employment." ECF No. 33 at 3 (filed under seal); ECF No. 32-2 at 56; ECF No. 32-3 at 20–22, 31–36. Additionally, on page 5 of the *GIG*, under a section titled "HOW TO USE THIS GUIDE[,]" Team Members are advised that:

> This *GIG* is not an employment contract with you or any other person, nor is it a promise regarding the terms or conditions of your employment. Neither this *GIG*, nor any other Company policy or representation, is intended to promise or guarantee any right to you or any other person, including employment for any period of time.

ECF No. 33 at 7; ECF No. 32-2 at 60. Based upon these express disclaimers, the Court finds that the *GIG* is not a contract under Maryland law.

Plaintiff tries to escape this conclusion by arguing that "the disclaimer on page five of the handbook is placed in an entirely different section of the handbook" from the alleged promises she relies on and "Defendant cites no disclaimer specifically disclaiming its progressive discipline section." ECF No. 39 at 12. This argument fails. An express disclaimer on the first page or in the preface of an employee handbook or policy manual is sufficient to defeat a claim that the handbook or manual is a contract under Maryland law.[6] *Lambert*, 93 F. Supp. 2d at 643; *see also Elliot v. Bd. of Transp. of Montgomery Cty. Cmty. Coll.*, 655 A.2d 46, 51 (Md. Ct. Spec.

---

[6] Moreover, the disclaimer that Team Members are at-will employees is "*prominently highlighted*", as recommended by the Maryland court in *Elliot v. Board of Transportation of Montgomery County Community College*, 655 A. 2d at 103 n.1 (emphasis in original).

App. 1995) (stating that the "placement [of the disclaimer] in the . . . introduction clearly indicates its application to the manual as a whole."). Moreover, Team Members, including Plaintiff, were required to sign a similar disclaimer every time a policy in the *GIG* was updated, regardless of the policy. ECF No. 32-3 at 20–22, 31–36. This repetition put Plaintiff on notice that the disclaimer applied to the *GIG* as a whole. Finally, there is an express disclaimer in the corrective action policy section of *GIG*, reserving Whole Foods right to discharge any Team Member without going through the described progressive discipline process. ECF No. 32-2 at 60.

For the reasons stated above, this Court joins with our sister court in holding that the *GIG* is not a contract under Maryland law and grants summary judgment in Defendant's favor. *See Vasquez v. Whole Foods Market, Inc.*, 302 F. Supp. 3d 36, 59–61 (D.D.C. 2018) (expressly holding that the *GIG* does not create enforceable contractual rights or obligations under Maryland law).

### B.  Plaintiff Cannot Establish a Claim for Breach of Contract Under Maryland Law

Even if the *GIG* did create contractual rights and obligations under Maryland law, which it does not, Plaintiff's specific contract claims regarding (1) the corrective action policy in the *GIG*; (2) the harassment policy in the *GIG*; and (3) the alleged oral policy regarding gender diversity in meetings would still fail. Under Maryland law, "[t]he elements of a claim for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011). For the reasons discussed below, Plaintiff is unable to establish one or more of those elements for each claimed breach of contract.

#### 1.  Plaintiff Cannot Establish a Breach of the Corrective Action Policy

Plaintiff alleges that Whole Foods' "policies *require* progressive discipline of employees

11

before the employees can be terminated[,]" ECF No. 1-2 ¶ 20 (emphasis added), and that Whole Foods violated this policy by "[s]ummarily terminating her without verbal counseling, written reprimand, and a legitimate final warning[.]" *Id.* ¶ 22. However, Defendant's corrective action policy clearly provides it with the discretion to use differing disciplinary procedures and to terminate employees without prior notice. *See* ECF No. 32-2 at 60–61 ("Depending on the nature and severity of the offense, however, the company reserves the right to discharge any Team Member without warning."; "The process may vary based on the severity of the situation."); ECF No. 33 at 53 (filed under seal) (using words that do not express a requirement or a mandatory process—e.g., "wherever possible," "may apply," "typically," "generally," "may be used," "may include"). The *GIG* emphasizes that this is especially true where, as here, the disciplinary action is the result of a major infraction. ECF No. 33 at 53 ("Counseling statements, or 'verbal warnings,' are appropriate in some cases; however, they are not required, and are not used in situations determined to be a major infraction and/or abrupt violation.") (filed under seal). Additionally, "the *GIG* does not give Whole Foods Team Members the authority to decide whether Corrective Actions issued to them are 'legitimate.'" ECF No. 32-2 at 62.

Whole Foods terminated Plaintiff's employment for what the *GIG* deems a major infraction—"Repeated inappropriate behavior in dealing with Team Members" ECF No. 33 at 55; ECF No. 32-3 at 106—after receiving multiple complaints regarding Plaintiff's behavior, interviewing 100 of the 109 employees working under Plaintiff, discussing the results of the investigation with Plaintiff via telephone, meeting with Plaintiff in person regarding her conduct and giving her the option to transfer, meeting with Plaintiff again and issuing her a Final Written Warning, and issuing Plaintiff an action plan with which she ultimately failed to comply. Defendant may not have completed every step of the Corrective Action process before

terminating Plaintiff; however, it was not required to because she was terminated for a major infraction; nor can it be said, given the facts above, that Plaintiff was terminated without notice or cause. ECF 32-2 at 14–16, 53; ECF 32-3 at 98–104, 106–07. Plaintiff has not shown a breach and thus her breach of contract claim based on Defendant's alleged failure to follow its corrective action policy fails for this reason as well.

### 2. Plaintiff Cannot Establish a Breach of the Policy against Harassment

According to Plaintiff, Defendant's personnel policies require "investigation of complaints of harassment[,]" ECF No. 1-2 ¶ 20, and Whole Foods "permitted a female staff member to call her a 'bitch dog' in Spanish and failed to investigate, correct or discipline the offending employee." *Id.* ¶ 22. However, Plaintiff has failed to set forth sufficient facts to show that Whole Foods breached its policy or that any damages resulted from an alleged breach.

Whole Foods' "Policy Against Harassment" protects employees from unlawful harassment, stating that "no Team Members should be teased, made fun of, put down, joked about, laughed at or made to feel different or as an outsider because of his or her race, color, ethnic background, national origin/ancestry, sex, religion, age, disability, sexual orientation, gender identity, marital status, medical condition, or any other protected factor." ECF No. 33 at 57 (filed under seal). The policy also states that "[o]nce a notification [that there has been unlawful harassment] is received by a member of leadership, Whole Foods will promptly conduct a thorough, objective and good-faith investigation." *Id.* at 58. Here, Plaintiff has failed to set forth sufficient facts to show that Ms. Fuentes calling plaintiff a "*perra,*" even if unpleasant, constitutes unlawful harassment under Defendant's policy. Specifically, Plaintiff has admitted that she does not know whether the term is "an insult that's racially based[,]" ECF N. 32-2 at 24, and has not identified any other "protected factor," upon which her claim of unlawful harassment relies. Thus, Plaintiff has not set forth sufficient facts to show a breach of Whole

13

Foods' harassment policy because she has not shown that she was unlawfully harassed based on a protected factor.

Additionally, Plaintiff has not shown damages as required for a breach of contract claim under Maryland law. Plaintiff has only claimed damages in this action for past and future lost wages and benefits resulting from her termination, ECF No. 32-2 at 57–58, and fails to explain how these damages relate to Defendant's alleged breach of its harassment policy. Perhaps to correct this omission, in her Opposition to the instant motion, Plaintiff appears to imply that Defendant violated its harassment policy by terminating her employment in retaliation for reporting Maria Fuentes' alleged harassment. ECF No. 39 at 14. However, Plaintiff has provided no facts to support this theory, while Whole Foods has presented an abundance of undisputed facts that contradict any claim that Plaintiff's employment was terminated in retaliation for reporting harassment. ECF No. 32-2 at 7–8 (Plaintiff testifying that she was fired because she sent a Team Member home without pay); ECF No. 32-3 at 8, (describing the call between Mr. Cartwright and other members of the Regional Leadership Team during which they reviewed Plaintiff's performance following her receipt of the final warning and decided to terminate her employment), *id.* at 106 (Final Written Warning signed by Plaintiff stating that the reason for the final warning was "[r]epeated inappropriate behavior in dealing with Team Members"), *id.* at 131 (email between Ms. Wescoe and Mr. Cartwright outlining talking points for Plaintiff's termination meeting); *id.* at 135–39 (meeting notes from Plaintiff's termination meeting describing the reasoning behind the termination decision). Because Plaintiff has shown neither a breach of the harassment policy nor resulting damages, Plaintiff's claim that Defendant's alleged violation of its harassment policy gives rise to a breach of contract claim under Maryland law also fails.

### 3. Plaintiff Cannot Establish a Breach of Contract Claim Based on Defendant's Alleged Oral Policy Regarding Gender Diversity in Meetings

Plaintiff claims that "Whole Foods' policy dictates that whenever a male employee supervisor meets with a female employee, another female should be present[,]" and that her meeting with Mr. Cartwright and Mr. Gearhart on May 30, 2016 was in contravention of this policy. ECF No. 1-2 ¶ 10. Plaintiff has since admitted, however, that her breach of contract claim rests exclusively on the written policies in the *GIG*, ECF No. 32-2 at 59, and that the gender diversity in meetings policy is not in the *GIG* nor anywhere else in writing, *id.* at 26. Thus, Plaintiff has failed to show that there is a contractual obligation as required under Maryland law for a breach of contract action.

Even if there had been a contractual obligation under the oral policy, Plaintiff has failed to allege that any of her asserted damages relate to a breach of this policy. Plaintiff's breach of contract claim fails on these grounds as well.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. A separate Order shall issue.

Date: <u>November   3, 2020</u>                       __/s/_____
                                                    GEORGE J. HAZEL
                                                    United States District Judge

15